**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AmTab Manufacturing Corporation,<br>Plaintiff,<br>vs.<br>Palmer Hamilton, LLC,<br>Defendant. | Case No. 1:26-cv-14401<br>Judge: To Be Assigned |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff AmTab Manufacturing Corporation ("AmTab"), for its Complaint against Defendant Palmer Hamilton, LLC ("Palmer Hamilton"), alleges as follows:

## NATURE OF THE ACTION

1. This is a declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, to declare that AmTab's mobile folding booths do not and cannot infringe U.S. Patent No. 9,615,665 (**Exhibit A**, "the '665 Patent") under 35 U.S.C. § 100, et seq., at least because AmTab has an implied license to the '665 Patent for these booths.

2. AmTab is an innovative and popular designer and manufacturer of furniture and signage. AmTab has expended significant time, effort, and resources to design, manufacture, and sell mobile folding booths. These booths are widely used in schools and cafeterias nationwide.

3. Palmer Hamilton sued AmTab in 2016, alleging that AmTab's mobile folding booths infringed U.S. Patent No. 9,370,265 (**Exhibit B**, "the '265 Patent").

4. The '665 Patent (the "child") is a direct continuation of the '265 Patent (the "parent"), and, as such, the two patents share the same disclosure.

5. Palmer Hamilton and AmTab settled the 2016 case, entering into a Settlement Agreement that, among other things, granted AmTab a full release for "any and all claims . . . arising out of or in any way related to the claims, allegations and causes of action that were asserted or could have been asserted in the Litigation relating to the '265 patent." Exhibit C at 1.

6. The Settlement Agreement also gave AmTab a "covenant[] not to sue AmTab for infringement of the '265 Patent by any product substantially in the form of such currently-offered mobile booth product," as described and shown in Exhibit A to the Settlement Agreement. *Id.* That Exhibit A depicts the mobile booth and includes a list of "Product Model Numbers," including MFBSP244. *Id.* at 4.

7. Pursuant to the Settlement Agreement, Palmer Hamilton dismissed the lawsuit with prejudice. *See id.* at 1, 6–7.

8. The continuation application that issued as the '665 Patent was pending before the United States Patent and Trademark Office ("USPTO") at the time of the Settlement Agreement and the dismissal with prejudice of the 2016 lawsuit. *See* Exhibit D at 8, 24–34.

9. The Settlement Agreement does not identify, mention, or discuss, let alone specifically exclude from the rights granted therein, the '665 Patent. *See generally* Exhibit C.

10. In July 2026, Palmer Hamilton sent a letter to AmTab, claiming infringement of the '665 Patent by AmTab's mobile folding booth, and demanding that AmTab "immediately cease manufacturing, importation, selling, and offering for sale or otherwise promoting" its mobile folding booths. Exhibit F at 3. The letter specifically accused AmTab's MFBSP244 product model of infringement. *Id.* at 1–2. In follow-up letters, Palmer Hamilton reiterated its position, sent a draft infringement complaint, and threatened to file suit against AmTab. *See* Exhibits H, J, K, M.

11. In support of its claim of infringement of the '665 Patent, Palmer Hamilton states

that it "ha[s] been able to physically inspect the relevant AmTab product." Exhibit J at 1. Palmer Hamilton admits that the physical product giving rise to its claim of infringement "appears to be at least similar to the design presented to us in 2016." Exhibit M at 2.

12. Despite repeated correspondence over the last four months, Palmer Hamilton has never identified any difference between the mobile folding booth it claims infringes the '665 Patent and the mobile folding booth identified in the Settlement Agreement. *See* Exhibits F, H, J, K, M. Likewise, the claim charts that Palmer Hamilton relies upon to assert infringement identify no material differences between the accused mobile folding booth and the mobile folding booth identified in the Settlement Agreement. *See* Exhibits H, K.

13. It is well settled that "a license or a covenant not to sue enumerating specific patents may legally estop the patentee from asserting *continuations* of the licensed patents in the absence of mutual intent to the contrary." *Endo Pharms. Inc. v. Actavis, Inc.*, 746 F.3d 1371, 1378 (Fed. Cir. 2014) (emphasis in original) (citing *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1361 (Fed. Cir. 2011); *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1279 (Fed. Cir. 2009)).

14. Accordingly, Palmer Hamilton is legally estopped from asserting the continuation '665 Patent against the full scope of products covered by the 2016 Settlement Agreement, which Palmer Hamilton admits includes the mobile folding booths Palmer Hamilton is now accusing. This Action seeks to vindicate AmTab's freedom to manufacture and sell its mobile folding booths by obtaining a declaratory judgment from this Court that the mobile folding booths do not infringe the '665 Patent due to the existence of AmTab's implied license.

## PARTIES

15. Plaintiff AmTab Manufacturing Corporation is an Illinois corporation with its

principal place of business at 600 Eagle Drive, Bensenville, IL 60106.

16. On information and belief, Defendant Palmer Hamilton, LLC is a Wisconsin limited liability company with its principal place of business at 143 S. Jackson St., Elkhorn, WI 53121.

## JURISDICTION AND VENUE

17. AmTab seeks a declaratory judgment that it does not infringe any claim of the ’665 Patent. The Court therefore has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1338(a) (patent), and 2201 & 2202 (declaratory judgment), as this declaratory judgment action presents a federal question that arises under the patent laws codified in Title 35 of the United States Code, including 35 U.S.C. § 271.

18. The Court has personal jurisdiction over Palmer Hamilton because Palmer Hamilton has, since July 2026, (i) repeatedly sent into Illinois correspondence directed to AmTab asserting that AmTab, an Illinois corporation located in this District, infringes the ’665 Patent; (ii) escalated its enforcement activities to include demanding that AmTab cease all commercial activities related to its mobile folding booths; and (iii) threatened to initiate patent infringement litigation against AmTab if AmTab does not comply. For example, Palmer Hamilton demanded that AmTab “cooperate and/or take actions to engage in discussions to amicably resolve this dispute” or else Palmer Hamilton would “initiate a lawsuit for patent infringement” in this District. Exhibit J at 1–2. In connection with that assertion, Palmer Hamilton sent AmTab a draft complaint asserting a claim of patent infringement captioned for this Court that Palmer Hamilton said it would file unless AmTab acceded to its demands. *Id.*; Exhibit K at 1.

19. The Court also has personal jurisdiction over Palmer Hamilton because Palmer Hamilton has previously contracted with AmTab, signing the Settlement Agreement at issue in this Complaint.

20. By repeatedly communicating and contracting with AmTab in Illinois concerning products designed and manufactured in Illinois, Palmer Hamilton has purposefully availed itself of the laws of Illinois and has subjected itself to personal jurisdiction in this Court.

21. Moreover, the exercise of personal jurisdiction comports with fair play and substantial justice because there is no burden on Palmer Hamilton, which has threatened to file a lawsuit against AmTab here; Illinois has an interest in adjudicating the dispute so as to permit its own corporation to operate freely; AmTab has an interest in obtaining convenient and effective relief in its home state; and all of Illinois, Wisconsin, and the federal judicial system have an interest in efficiently resolving the present controversy and vindicating important legal rights.

22. Venue is proper in this Court under 28 U.S.C. § 1391(b) at least because a substantial part of the events giving rise to AmTab's claim occurred in this District: (i) the mobile folding booths covered by the Settlement Agreement that Palmer Hamilton accuses of infringement are designed and manufactured in, and sold from, this District; (ii) the communications alleging infringement and threatening to initiate litigation were directed to and received in this District; and (iii) the 2016 Settlement Agreement was entered into by Palmer Hamilton with AmTab, and it identifies AmTab as an Illinois entity.

## FACTUAL BACKGROUND AND ALLEGATIONS

23. For nearly 70 years, AmTab has designed and manufactured furniture in Illinois. Its products are well-suited to its customers' needs, and it sells these products nationwide and ship globally, where they are used widely in schools and cafeterias.

24. On information and belief, Palmer Hamilton designs, manufactures, and sells furniture, including mobile folding booths, that compete with AmTab's own products.

### A. In 2016, Palmer Hamilton Sued AmTab on the ’265 Patent, and the Parties Entered Into a Settlement Agreement.

25. On July 22, 2016, Palmer Hamilton filed a patent infringement lawsuit in the United States District Court for the Western District of Wisconsin against AmTab, accusing AmTab of infringing the ’265 Patent. *See Palmer Hamilton, LLC v. AmTab Mfg. Corp.*, No. 3:16-cv-00522, ECF No. 1 (W.D. Wis. July 22, 2016) (“the 2016 Litigation”).

26. Less than five months later, AmTab and Palmer Hamilton resolved the 2016 Litigation through a written Settlement Agreement, effective December 8, 2016, a copy of which is attached as **Exhibit C**.

27. The Settlement Agreement required Palmer Hamilton to file a stipulated motion dismissing with prejudice all claims asserted in the 2016 Litigation, and the case was dismissed with prejudice. *See id.* at 1, 6–7.

28. The Settlement Agreement provided, among other things, that “in consideration of the mutual covenants hereinafter contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:”

> 1. **Release.** Palmer Hamilton hereby fully and finally releases AmTab, its affiliates, officers, directors, shareholders, employees, agents, consultants and attorneys from any and all claims, demands, causes of action and liabilities relating to the ‘265 patent arising out of or in any way related to the claims, allegations and causes of action that were asserted or could have been asserted in the Litigation relating to the ‘265 patent.
>
> 2. **Covenant Not to Sue.** Palmer Hamilton acknowledges and agrees that the mobile booth product currently offered for sale by AmTab as of the Effective Date (as shown in Exhibit A, attached hereto) is not covered by any claim of the ‘265 patent. In consideration of the terms herein, Palmer Hamilton covenants not to sue AmTab for infringement of the ‘265 Patent by any product substantially in the form of such currently-offered mobile booth product.

Exhibit C at 1.

29. Exhibit A to the Settlement Agreement includes an AmTab marketing document that recites specific products, identified by product number, including Mobile Folding Booth models MFBS244 and MFBS245 and Mobile Folding Booth Seating Package models MFBSP244, MFBSP245, MFBSP304, and MFBSP305. *See* Exhibit C at 4.

30. In addition to the description of the covered mobile folding booths, Exhibit A to the Settlement Agreement contains images of those products:





(Exhibit C at 3–4.)

31. Exhibit A to the Settlement Agreement also describes how the covered mobile folding booths operate. For example, it explains that the booth has a "High Speed Gas Cylinder Assist mechanism for easier operation"; an "E-Z Grip Positive Plunger Locking System for the seat, when in use"; that "[w]hen Mobile Booth Seating is IN USE, all four (booth) legs will have floor contract [sic], gripping the floor with no movements or sliding"; and that "[w]hen the Booth is folded away for storage, the legs without casters go up and the legs with casters will have floor contact for mobility and ease of operation." *Id.*

32. The Settlement Agreement is silent as to the '665 Patent and the then-pending patent application from which the '665 Patent issued. *See generally* Exhibit C.

### B. Palmer Hamilton Obtains the ’665 Patent While Pursuing Its 2016 Litigation Against AmTab.

33. In June 2016, a little more than a month before suing AmTab, Palmer Hamilton filed a patent application, No. 15/180,536 (the "’665 Patent application"), with the USPTO, which later issued as the ’665 Patent. (The ’665 Patent’s prosecution history is attached as **Exhibit D**, and the ’265 Patent’s prosecution history is attached as **Exhibit E**.) *See* Exhibit D at 57, 60.

34. That application claimed priority to, and was a direct continuation of, Application No. 13/940,564, which issued as the ’265 Patent. *Id.*

35. The ’665 Patent thus belongs to the same patent family as the ’265 Patent and is a "child" patent of the ’265 Patent. Because the ’665 Patent is a continuation, it shares the ’265 Patent’s specification and figures in all material respects and, by definition, can claim no invention not already disclosed in the ’265 Patent.

36. On July 21, 2016, the USPTO rejected as obvious some claims of the ’665 Patent’s application, including independent claim 1. *See* Exhibit D at 42–45.

37. On December 21, 2016—less than two weeks after the Settlement Agreement’s effective date—Palmer Hamilton amended the claims of the ’665 Patent’s application. *Id.* at 24. That included amending independent claim 1, *id.* at 27–28, which Palmer Hamilton now alleges in correspondence that AmTab infringes, *see infra* ¶¶ 39–65.

38. On February 1, 2017, the USPTO issued a Notice of Allowance for the application, and the ’665 Patent issued on April 11, 2017. *See* Exhibit D at 1, 8.

### C. Nearly a Decade Later, Palmer Hamilton Accuses the Same Mobile Folding Booths of Infringing the Child ’665 Patent—Without Mentioning the 2016 Settlement Agreement.

39. On July 27, 2026, Palmer Hamilton sent a demand letter to AmTab, asserting "rights is [sic] the attached U.S. Patent No. 9,615,665 (the ‘665 patent) for a Foldable Mobile

Restaurant Booth." **Exhibit F** at 1 (the "July 27 Letter"). The letter included images of the product being accused:






(Exhibit F at 2.)

40. The letter, in fact, attached the parent '265 Patent, not the '665 Patent. It also made no mention of the Parties' 2016 Litigation or the Parties' Settlement Agreement. *See* Exhibit F.

41. Nonetheless, Palmer Hamilton stated that it had "come to our attention" that AmTab was selling mobile folding booths that "likely infringe[d]" the '665 Patent, identifying the very same model numbers that were listed in Exhibit A to the Parties' Settlement Agreement. *Compare* Exhibit F at 1–3, *with* Exhibit C at 4.

42. Palmer Hamilton did not compare the products to any claims of the '665 Patent, but nonetheless demanded proof of non-infringement—or else that AmTab "immediately cease manufacturing, importation, selling, and offering for sale or otherwise promoting the mobile folding booth seating and the mobile folding booth seating package with the detached table in question and any other product having the features as described above." Exhibit F at 3.

43. The Parties exchanged further correspondence, in which AmTab sought clarity regarding which patent was asserted and what Palmer Hamilton's infringement positions were. *See* **Exhibit G** (AmTab's August 6, 2026 response letter); **Exhibit H** (Palmer Hamilton's August 26,

2026 reply letter and first claim chart); **Exhibit I** (AmTab's September 10, 2026 response letter); **Exhibit J** (Palmer Hamilton's October 23, 2026 reply letter); **Exhibit K** (Palmer Hamilton's draft complaint and exhibits attached to October 23, 2026 letter). None of Palmer Hamilton's letters mentioned the Parties' 2016 Litigation or the Parties' Settlement Agreement.

44. Eventually, in its letter of October 23, Palmer Hamilton stated that it had "physically inspect[ed] the relevant AmTab product." Exhibit J at 1. The letter further stated: "In the event that AmTab fails to cooperate and/or take actions to engage in discussions to amicably resolve this dispute, we will have no choice but to initiate a lawsuit for patent infringement. We have attached the draft of the complaint that we are fully prepared to file and serve it on AmTab if this dispute is not resolved amicably. . . . We will consider a lack of response by [October 30, 2026] an indication that you are not interested in resolving this matter amicably and will initiate the above-mentioned lawsuit." Exhibit J at 1–2.

45. Palmer Hamilton's draft complaint is captioned for this Court; accuses AmTab's "Mobile Folding Booth Seating" products of infringing "one or more claims" of the '665 Patent, including independent claim 1; asserts that AmTab, "together with its affiliates, agents, suppliers, and customers," infringes under 35 U.S.C. § 271(a); asserts that AmTab infringes under 35 U.S.C. § 271(b); and seeks enhanced damages and preliminary and permanent injunctive relief. Exhibit K at 1–2, 4–5, 10–12. Like Palmer Hamilton's letters, the draft complaint never mentions the 2016 Litigation or the Settlement Agreement. *See id.*

46. The product accused of infringement in Palmer Hamilton's draft complaint is shown below:





(Exhibit K at 28.)

### D. When Confronted with the 2016 Settlement Agreement, Palmer Hamilton Declines to Abide by Its Full Legal Scope.

47. During the Parties' pre-suit correspondence, AmTab identified the Settlement Agreement and asserted that it contains an implied license to the '665 Patent, citing binding Federal Circuit law. **Exhibit L**.

48. Palmer Hamilton responded, denying that AmTab had an implied license to the '665 Patent. **Exhibit M** ("November 6 letter").

49. Palmer Hamilton asserted, inaccurately, that "an implied license of a continuation patent only arises when a party expressly licenses the parent patent." *Id.* at 1 (citing *Gen. Protecht*, 651 F.3d at 1360–63). It further argued: "The 2016 Settlement Agreement between Palmer Hamilton and AmTab did not contain any express, or even implied, license under the '265 patent. It merely stipulated that the proposed design was not covered by the '265 patent. In the absence of any license granted under the '265 patent, there is no implied license to the '665 patent. The doctrine of legal estoppel therefore is inapplicable." *Id.* (citing and quoting *Endo Pharms.*, 746 F.3d at 1378).

50. Palmer Hamilton did not make any other arguments concerning the implied license.

51. Palmer Hamilton's sole position—that there can be no implied license associated with a covenant not to sue—is incorrect.

52. The Federal Circuit has repeatedly held that a covenant not to sue is not substantively different from a license, and that the label used does not matter: "The real question . . . is not whether an agreement is framed in terms of a 'covenant not to sue' or a 'license.' That difference is only one of form, not substance—both are properly viewed as 'authorizations.'" *TransCore*, 563 F.3d at 1276; *accord Endo Pharms.*, 746 F.3d at 1378 (synthesizing precedent into the "rule that a license or a covenant not to sue enumerating specific patents may legally estop the patentee from asserting *continuations* of the licensed patents in the absence of mutual intent to the contrary") (emphasis in original).

53. Both *TransCore* and *General Protecht* concerned covenants not to sue, and nevertheless, in both cases, the Federal Circuit held that there was an implied license to a continuation patent. *See Gen. Protecht*, 651 F.3d at 1357 (explaining that the covenant was tied to the products accused of infringement), 1360 (explaining that, in *TransCore*, the patentee had "in effect licensed [the supplier] by covenanting not to sue under multiple patents").

54. Indeed, in *TransCore*, the settlement agreement provided that "[t]his Covenant Not To Sue shall not apply to any other patents issued as of the effective date of this Agreement or to be issued in the future[,]" and that "[n]o express or implied license or future release whatsoever is granted to MARK IV or to any third party by this Release." *TransCore*, 563 F.3d at 1273. Even so, the Federal Circuit found estoppel based on an implied license. *Id.* at 1279–80.

55. Applying *TransCore,* the *General Protecht* court explained that, as here, "[the patentee] cannot deny, however, that the newly asserted continuations are based on the same disclosure as the previously licensed patents and that, by definition, the continuations can claim

no new invention not already supported in the earlier issued patents. Moreover, the same products accused in the earlier suit are accused here." *Gen. Protecht*, 651 F.3d at 1361.

56. The *General Protecht* court further explained: "From our holding in *TransCore* it reasonably follows that where, as here, continuations issue from parent patents that previously have been licensed as to certain products, it may be presumed that, absent a clear indication of mutual intent to the contrary, those products are impliedly licensed under the continuations as well. *If the parties intend otherwise, it is their burden to make such intent clear in the license.*" *Id.* (emphasis added); *see also Cheetah Omni LLC v. AT&T Servs., Inc.*, 949 F.3d 691, 696 (Fed. Cir. 2020) ("The expectation is properly placed on the patent owner . . . to specifically carve out continuation patents that it intended to exclude because [the patent owner] has the most information about its total patent portfolio.").

57. If Palmer Hamilton "did not intend its license of these products to extend to claims presented in continuation patents, it had an obligation to make that clear." *See Gen. Protecht*, 651 F.3d at 1361.

58. Nothing in the Settlement Agreement reflects—much less provides a "clear indication of"—a "mutual intent" to exclude continuations of the '265 Patent, including the then-pending patent application that issued as the '665 Patent. *See Gen. Protecht*, 651 F.3d at 1361; *see generally* Exhibit C.

59. Palmer Hamilton knew its '665 Patent application was pending at the time of the 2016 Settlement Agreement. *See* Exhibit D at 8, 24, 41.

60. Palmer Hamilton did not exclude its '665 Patent application from the terms of the Settlement Agreement. *See generally* Exhibit C.

61. Palmer Hamilton's November 6 letter further stated that the "design we

photographed appears to be at least similar to the design presented to us in 2016." Exhibit M at 2.

62. Palmer Hamilton thus admits it has no facts by which it could plausibly allege that the mobile folding booth products identified and accused in its 2026 correspondence are not covered by the Settlement Agreement's covenant not to sue and implied license—that is, the listed products in Exhibit A, as well as "any product substantially in the form of such currently-offered mobile booth product," *see* Exhibit C at 1.

63. Despite this, Palmer Hamilton continues to threaten that "[i]n the event that AmTab fails to cooperate and/or take actions to engage in discussions toward amicably resolving this dispute by November 20, 2026, we will have no choice but to file and serve the complaint." Exhibit M at 2.

64. Palmer Hamilton's November 6 letter thus confirms that it is threatening to bring legal action to assert patent infringement against AmTab, despite the fact that Palmer Hamilton has no right to enforce the '665 Patent against AmTab's mobile folding booths.

65. AmTab currently makes and sells the covered mobile folding booths identified in Exhibit A to the Settlement Agreement, including MFBS244 and MFBSP244, among others, and AmTab intends to continue to do so. There is thus a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## COUNT I

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '665 PATENT

66. AmTab hereby incorporates by reference paragraphs 1 through 65 of the Complaint above as if fully set forth herein.

67. AmTab does not infringe any claim of the '665 Patent because the Settlement

Agreement (Complaint, Exhibit C) extends an implied license to AmTab for the mobile folding booths identified therein and substantially similar products.

68. AmTab does not infringe any claim of the ’665 Patent because Palmer Hamilton is legally estopped from asserting infringement of the ’665 Patent against AmTab’s mobile folding booths and substantially similar products.

69. AmTab does not infringe any claim of the ’665 Patent because Palmer Hamilton cannot carry its burden of proving that the accused mobile folding booths satisfy all the limitations of any claim of the ’665 Patent.

70. An actual controversy exists between the Parties as to whether the Settlement Agreement extends an implied license to the ’665 Patent for AmTab’s mobile folding booths, as shown in Exhibit A to the Settlement Agreement (Complaint, Exhibit C), and substantially similar products.

71. An actual controversy exists between the Parties as to whether Palmer Hamilton can carry its burden of proving that the accused mobile folding booths satisfy all the limitations of any claim of the ’665 Patent.

72. An actual controversy exists between the Parties as to whether Palmer Hamilton is legally estopped from asserting infringement of the ’665 Patent against AmTab’s mobile folding booths and substantially similar products.

73. AmTab is entitled to a declaratory judgment that it does not infringe any claim of the ’665 Patent because the Settlement Agreement (Complaint, Exhibit C) extends an implied license to AmTab for its mobile folding booths identified therein and substantially similar products.

74. AmTab is entitled to a declaratory judgment that it does not infringe any claim of

the ’665 Patent because Palmer Hamilton is legally estopped from asserting infringement of the ’665 Patent against AmTab’s mobile folding booths and substantially similar products.

75. Alternatively, AmTab is entitled to a declaratory judgment that it does not infringe any claim of the ’665 Patent because Palmer Hamilton cannot carry its burden of proving that the accused mobile folding booths satisfy all the limitations of any claim of the ’665 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AmTab Manufacturing Corporation respectfully prays for relief against Defendant as follows:

A. A declaration by this Court and declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that AmTab, and its customers, officers, directors, shareholders, members, managers, employees, subsidiaries, and affiliates, past, present and future, have an implied license to the ’665 Patent, arising from the Settlement Agreement, effective December 8, 2016, to import, use, make, offer for sale, or sell AmTab’s mobile folding booths and substantially similar products, and that the license provides a complete defense to any future allegations or assertions of Palmer Hamilton’s claims of patent infringement of the ’665 Patent against AmTab’s mobile folding booths and substantially similar products;

B. A declaration by this Court and declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that AmTab does not infringe, and has not infringed, any claim of the ’665 Patent by making, using, offering for sale, selling, or importing its mobile folding booths and substantially similar products, and that Palmer Hamilton is legally estopped from asserting the ’665 Patent against these products;

C. An order declaring this case exceptional under 35 U.S.C. § 285 and awarding AmTab its attorney fees, litigation expenses, and costs; and

D. Such equitable or other further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable in this action.

Dated: November 18, 2026

Respectfully submitted,

**HONIGMAN LLP**

By: */s/ Dennis J. Abdelnour*______________

Dennis J. Abdelnour (IL 6292242)
Aaron D. Bray (IL 6348140)
321 North Clark Street, Suite 500
Chicago, IL 60654
Telephone: 312-701-9300
Fax: 312-701-9335
dabdelnour@honigman.com
abray@honigman.com

*Attorneys for Plaintiff AmTab Manufacturing Corporation*